UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT JACOBS,

    Plaintiff,

v.

BENJAMIN WINKLEBLACK, et al.,

    Defendants.

Case No. 17-cv-06790-NC

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: ECF 8

Even at the pleading stage, properly stating a due process claim is no nap in the sun. It requires a plaintiff to claw through Fourteenth Amendment jurisprudence littered with multiplicative, shifting, and overlapping legal theories. Still, Federal Rule of Civil Procedure 8 requires a plain statement of the plaintiff's claim, so the constitutional ball of yarn must be untangled and delineated before the case can move on.

Here, plaintiff Robert Jacobs does not identify a cognizable legal theory for his claim that defendants Benjamin Winkleblack, Melanie Sobel, and the Santa Cruz County Animal Services Authority (SCCASA) violated his constitutional due process rights when they allowed a third party to adopt a cat that Jacobs claims he owned. The Court therefore GRANTS Defendants' motion to dismiss as to Jacobs' Fourteenth Amendment due process claims, with leave to amend. The remaining claims depend on the federal claims for supplemental subject matter jurisdiction, so the Court declines to reach Defendants' motion on these claims, unless and until Jacobs amends the complaint.

## I. BACKGROUND

The following factual allegations pled in the complaint are taken as true and construed in the light most favorable to Jacobs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

On June 24, 2015, Jacobs took a trip from his home in Simi Valley, California to Watsonville, California and brought along his cat. Third Amended Compl. (TAC) ¶ 13 (ECF 1-6). The cat was an orange, black, and white short-haired calico named Carli. *Id.* On July 4, 2015, while still in Watsonville, Carli escaped from Jacobs' hotel room. *Id.* ¶ 14. Jacobs tried for several days, unsuccessfully, to find Carli by putting up flyers, driving around Watsonville looking for her, and talking to people and rescue groups in the area. *Id.* ¶ 15. The complaint does not allege that Jacobs looked for Carli at the animal shelter during this quest for the runaway feline. *See id.*

On August 8, 2015, after Jacobs returned to his home in Simi Valley, he received an anonymous phone call informing him that there was a cat at the Santa Cruz County Animal Shelter matching the photo and physical description on the flyers Jacobs had posted. *Id.* ¶ 16. Two days later, on August 10, 2015, Jacobs went to the shelter and found Carli there, with her name and other information written on the outside of the cage. *Id.* ¶ 17. When Jacobs opened the cage to pet Carli, a shelter employee told Jacobs he could not pet the cat without first filling out adoption paperwork. *Id*. Jacobs asserted that he did not need to fill out adoption forms because he was Carli's owner. *Id*. As evidence of ownership, he showed the shelter employees his driver's license and a photo of himself with Carli that had been taken in May of 2015. *Id*. Carli did not have a microchip or license. *Id.* When the shelter employee noticed from the driver's license that Jacobs lived in Simi Valley, she refused to allow Jacobs to take the cat, citing a shelter rule restricting the distance adopted cats could travel. *Id.* ¶ 18. At Jacobs' behest, the employee confirmed the policy with her managers, defendants Winkleblack and Sobel. *Id.* After the travel restriction policy was confirmed, Jacobs argued the point "for some time" but eventually gave up and left. *Id*.

Over a period of several days, Jacobs went back to the shelter five or six times

Case No. 17-cv-06790-NC         2

trying to reclaim Carli, but each time was denied. *Id.* ¶ 19. On the final visit, on August 21, 2015, Winkleblack confronted Jacobs, saying he heard Jacobs tried to steal Carli on his previous attempts to reclaim her and allegedly physically pushing Jacobs away from Carli's cage and toward the exit. *Id.* Winkleblack then yelled at Jacobs, threatened to call the sheriff and have Jacobs arrested for trespassing, and said, "I would rather kill the cat, than return her to you." *Id.* Jacobs responded, "God forbid," and immediately left the shelter. *Id.*

At Jacobs' request, Jacobs' friend Carol Thomas came from her home in Sacramento and tried on August 25, 2015, to adopt Carli. *Id.* ¶ 20. The shelter employee working at the front desk told Thomas she lived too far away and could not adopt the cat. *Id.* Thwarted, Jacobs returned home, where he "tried other [unspecified] avenues to obtain the return of his cat." *Id.* ¶ 21.

Jacobs filed a civil action on July 26, 2016, in California Superior Court, County of Santa Cruz. *See* Notice of Removal (ECF 1); Complaint (ECF 1-1). The original complaint contained only state law causes of action, but Jacobs amended the complaint three times, eventually adding claims for violations of federal civil rights under the Fourteenth Amendment to the U.S. Constitution. *See* Notice of Removal ¶¶ 2–6; *see generally* TAC. With the federal civil rights claims as a jurisdictional basis, Defendants removed the action to federal court. *See* Notice of Removal ¶¶ 7–10.

The third amended complaint lists three causes of action against Winkleblack, Sobel, and SCCASA:

- Declaratory Judgment of Ownership (referring to California Government Code § 910 et. seq., California Food and Agricultural Code § 31752, and Santa Cruz County Ordinances §§ 6.20.090, 6.20.100);
- Trespass to Chattel (referring to California Food and Agricultural Code §§ 31752, 31754 and California Government Code §§ 815.2, 910 et. seq.); and
- Violation of Civil Rights (referring to the Fourteenth Amendment of the U.S. Constitution; Article 1, § 7(a) of the California Constitution; Santa Cruz

Case No. 17-cv-06790-NC 3

County Code §§ 6.20.090, 6.20.010; California Food and Agricultural Code §§ 31752, 31752.2, 31754; and California Civil Code §§ 654, 655, 663, 669, 679).

Defendants now move under Rule 12(b)(6) to dismiss the operative third amended complaint for failure to state a claim. *See* Mot. to Dismiss (ECF 8). All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). *See* ECF 9, 17.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Federal Claims

The Court begins its analysis with Jacobs' Fourteenth Amendment claims, as these are the hook for federal jurisdiction under 28 U.S.C. § 1331.[1] Fundamentally, the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The complaint alleges that Defendants violated Jacobs' right to both substantive and procedural due process under the Fourteenth Amendment by refusing to allow Jacobs to take Carli home and instead allowing a third party to adopt Carli. TAC ¶¶ 65, 67.

Before delving into the complaint's numerous and intertwined assertions about the Fourteenth Amendment claims, it is helpful to step back. Guiding this analysis is the important recognition that procedural and substantive due process violations are distinct legal claims, each with their own set of elements and facts that must be pled in a complaint. A § 1983 claim based on procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). In contrast, a substantive due claim process involves showing that the government engaged in conduct that is so arbitrary it "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

Equally important is the recognition that a due process claim—procedural or substantive—varies depending on who or what did the depriving. With substantive due process, for example, the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). And in the latter case where a government officer's action caused the deprivation, then a government entity like SCCASA "may not

---

[1] Although the complaint does not cite or reference it, 42 U.S.C. § 1983 provides the statutory cause of action for constitutional claims like the ones Jacobs brings here. Jacobs acknowledges this in his opposition brief. *See* Opp. at 15 (ECF 23).

Case No. 17-cv-06790-NC                5

be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind [the] violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690–91 (1978)). A similar point—that the nature of the alleged deprivation colors the constitutional analysis—can be made for procedural due process. For example, the existence of post-deprivation state law remedies can nullify a procedural due process claim, but only when the deprivation was caused by random and unauthorized conduct; such a claim is not barred where the deprivation is foreseeable and the state can therefore be reasonably expected to make a pre-deprivation process available. *See Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990); *Swenson v. Siskiyou Cty.*, 498 F. App'x 719, 720 (9th Cir. 2012). Clearly, constitutional law can get a little hairy. This kind of nuance demands precision in the pleadings.

Jacobs' complaint is inadequate under Rule 8 and subject to dismissal under Rule 12(b)(6), because it muddles the distinctions articulated above in a way that makes it impossible to discern Jacobs' legal theory of liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (noting that a complaint must allege "all the material elements necessary to sustain recovery under some viable legal theory"); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). The complaint alleges that the Food and Agricultural Code and Santa Cruz County Code required "Defendants, and each of them" to allow Jacobs "the right to redeem his cat prior to any disposition of the animal" and to give Jacobs notice and "an opportunity to contest" before allowing Carli to be adopted by a third party. TAC ¶ 58. The complaint continues by asserting that Defendants' "refusal to return the cat to [Jacobs], under the guise of enforcing an arbitrary, unreasonable and unconstitutional travel ban, violated [Jacobs'] rights" under the Fourteenth Amendment and the California Constitution. TAC ¶ 63.

Peering even slightly past the surface of these allegations reveals an unwieldly

Case No. 17-cv-06790-NC              6

number of potential due process claims waiting to pounce, with little guidance on which version Jacobs is actually claiming. Is Jacobs challenging the facial constitutionality of the shelter's "travel ban," for example, or the individual defendants' application of it, or both, or neither? Or perhaps the claim is for the shelter employees' failure to follow the relevant state and county law. In that case, the complaint must make eminently clear which employees allegedly committed the violation, and who is responsible for that behavior. Is it, for example, a respondeat superior claim against Winkleblack and Sobel for an unnamed shelter employees' behavior, and/or a *Monell* claim against SCCASA? With only a little imagination, countless other variations of potential due process claims could be massaged from these broad assertions.

Jacobs' explanations of his claims in paragraphs 65–69 of the complaint only further confuse. Regarding substantive due process, Jacobs claims that Winkleblack's behavior toward Jacobs on August 21, 2015—physically and verbally confronting him and threatening to kill Carli rather than giving her to Jacobs— was "the type of capricious government conduct that violates substantive due process" and is "exactly what substantive due process is intended to prevent." TAC ¶ 66. If this is the extent of Jacobs' substantive due process claim, then the complaint falls flat in explaining how Sobel or SCCASA violated Jacobs' substantive due process rights. It is also doubtful that these allegations could sustain a substantive due process claim, as "substantive due process does not guarantee a pleasant tone of voice or courteous manner," and "assertions of hostile tone of voice do not otherwise transform" a state agent's action "into conscience shocking conduct." *Brittain v. Hansen*, 451 F.3d 982, 998 (9th Cir. 2006). Furthermore, this substantive due process theory neglects and strays from Jacob's apparent facial challenge to the shelter's "travel ban."

On procedural due process, Jacobs asserts that "Defendants had no appropriate procedures to prevent an unconstitutional deprivation of property" and "provided no mechanism for [Jacobs] to challenge the decision or to seek review of their determination that the photographic evidence of ownership he provided was not sufficient." TAC ¶¶ 67–

Case No. 17-cv-06790-NC 7

1  68. Framed in this way, Jacobs appears to be making a facial challenge to the adequacy of
2  the relevant state and county policies. If so, this claim does not implicate the individual
3  defendants, and it chafes at Jacobs' assertion that the Food and Agricultural Code § 31752
4  did afford him a right to claim Carli before she was adopted. *See* TAC ¶ 60.

Muddled indeed. To comply with Rule 8, Jacobs' complaint must at a minimum lay out each substantive due process claim and procedural due process claim he asserts and, for each one:

- Identify what the precise property deprivation was and when it happened (e.g. refusing to allow Jacobs to claim the cat versus allowing a third party to adopt the cat without an opportunity for Jacobs to be heard);
- Identify what caused the deprivation (e.g. Winkleblack's confrontation of Jacobs or the government statutes and regulations on their face); and
- Spell out the theory of liability that applies to the defendant or defendants (e.g. direct liability, *Monell*).

Without these delineations, the complaint's coarse strokes do not fulfill Rule 8's most basic requirement to plainly state a plausible claim for relief. However, with amendment, the claims may yet land on their feet. Thus, Jacobs' Fourteenth Amendment claims are DISMISSED, with leave to amend.

### B. State Law Claims

The remaining claims in the complaint are within the Court's discretionary supplemental jurisdiction under 28 U.S.C. § 1367, but do not have an independent basis for federal subject matter jurisdiction. The Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). And the Court has "discretion to remand when the exercise of pendent jurisdiction is inappropriate." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

Because the federal claims are subject to dismissal, the Court does not reach Defendants' motion to dismiss Jacobs' state law claims. If Jacobs does not amend the

Case No. 17-cv-06790-NC          8

complaint to properly state a federal claim for relief, the Court will remand the state law claims to Santa Cruz County Superior Court.

## IV. CONCLUSION

Jacobs' third amended complaint fails to state a claim for relief under federal law, because it does not reasonably identify a cognizable legal theory for procedural or substantive due process violations under the Fourteenth Amendment. These constitutional claims are DISMISSED, with leave to amend.

Without viable federal claims, there is no independent basis for subject matter jurisdiction over the remaining state law claims. Thus, the Court does not reach Defendants' motion to dismiss the state law claims, but anticipates remanding them to state court unless Jacobs amends the complaint to state a federal claim.

The amended complaint, should Jacobs choose to file one, is due March 5, 2018.

**IT IS SO ORDERED.**

Dated: February 12, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 17-cv-06790-NC        9